## SOUTHWORTH *against* THE STATE :

### IN ERROR.

Where an information charged the prisoner with having made an assault and battery upon the body of another, and with having, in a violent manner, and with great force, thrown him upon the ground, and with having dragged him into a brook or pond of water, and pressed and held his body and face in the water and

*Middlesex,*
July,
1824.

Southworth
*v.*
State.

mud ; and with having, by so holding his body and face in the water and mud, attempted to suffocate and drown him, with intent so to suffocate and drown him ; it was held, that such information charged an assault and battery with an attempt and with intent *to kill ;* but if otherwise, that still the offence charged was a high crime and misdemeanour at common law, and was not, therefore, within the jurisdiction of the county court.

If an information conclude *contra formam statuti,* and the offence charged is not within any statute, these words may be rejected as surplusage.

This was an information against *Southworth,* before the county court of *Middlesex* county, alleging, That at *Saybrook,* on the 16th of *July,* 1821, said *Southworth,* with force and arms, an assault and battery made on the body of *Samuel Webb,* and him beat and struck on the breast and head, and then and there, in a violent manner, with great force, threw him upon the ground, and dragged him, while lying on the ground, into a brook or pond of water, and pressed and held his body and face in the water and mud, and by so holding his head and face in the water and mud, attempted to suffocate, strangle and drown him, and with intent so to suffocate and drown him, held him in the mud and water before mentioned, during ten minutes ; and many other injuries and enormities did, against the peace, and contrary to the statute in such case provided.

*Southworth* was tried on the plea of *Not guilty ;* was found guilty ; and was sentenced to pay a fine of 25 dollars, and costs. On a writ of error in the superior court, this judgment was affirmed. To obtain a reversal of both these judgments, the present writ of error was brought.

*Staples* and *L. T. Clark,* for the plaintiff in error, after remarking, that if the crime charged in the information, were a mere breach of the peace, by an assault and battery, the county court had jurisdiction, and, in this respect, there was no error ; but if the information contained a charge of a high crime and misdemeanor, the county court had no jurisdiction, and the judgment was, on that account, erroneous ; contended, 1. That the facts charged in the information, according to the correct meaning of the language employed to describe them, amounted to a high crime and misdemeanor.

In the first place, the information charges an assault and battery *with intent to kill ;* and if so, it brings the case fully and literally within the decision in *The State* v. *Danforth,* 3 *Conn. Rep.* 112. There can be no dispute about the meaning of any of the language in this information, except the word *drown.* The *popular* meaning of this word, is, *to kill—to destroy life ;*

and the popular meaning, is the legal meaning. If I were to say, that such an one had been *drowned*, I should be understood to say, that he was *dead*. If I say such a man has *drowned* another, I must be understood to say, that he has *killed* him. The *scientific* meaning of the word is the same. "*Drown* signifies the extinction of life, by immersion in water. 1 *Gregory's Dict. let.* D. "*Drowning* is the extinction of life, in consequence of immersion in a fluid." 7 *Edin. Encyclopedia, let.* D. *verb.* Drowning.

*Middlesex,*
*July,*
*1824.*

Southworth
*v.*
State.

Secondly, whether the information alleges an intent to kill, or not, the facts charged still amount to a high crime and misdemeanor, of which the superior court alone has jurisdiction. It may not be easy to give a full and correct definition of this offence; (2 *Swift's Syst.* 365.) such a definition being more difficult than to say, whether a given set of facts constitutes the offence. High crimes and misdemeanors are described as " such immoral and unlawful acts as are nearly allied, and equal in guilt, to a felony ; and yet, owing to the absence of some technical circumstance, do not fall within the definition of a felony." 1 *Russell on Crimes*, 61, 2. In an information for a breach of the peace, if no other or more criminal intention is alleged ; however aggravated the facts may be, or however dangerous to human life the conduct may be ; the offence still remains a breach of the peace. If *A*. assault *B*., and beat him ever so grievously, by breaking his limbs, depriving him of sight, or doing other great bodily harm, it is still nothing more than an aggravated breach of the peace. *Commonwealth* v. *Cunningham* & al. 13 *Mass. Rep.* 245. But if it be alleged, that the assault, or assault and battery, was committed with an intention to commit another and more heinous crime, but which crime was not completed, then the assault, or assault and battery, becomes a high crime and misdemeanor ; and if it be so alleged, the county court has not jurisdiction. An assault and battery with intent to murder, when neither murder nor manslaughter has been committed, is a high crime and misdemeanor. The intent to kill makes it more than an assault and battery ; but as death has not ensued, it is neither murder nor manslaughter. It is, therefore, a high crime and misdemeanor. An assault and battery with intent to rob, where no robbery was committed, would be a high crime and misdemeanor. An assault and battery with intent to put out the eyes, slit the nose, cut off the ears or other limbs, where the object was not accomplished, would be a high crime and mis-

demeanor. If there were no statute providing a punishment for the offence, an assault and battery with intent to ravish, where no ravishment had taken place, would be a high crime and misdemeanor. To get a woman drunk, with intent to ravish her; or to get one drunk, with a view of getting his money, or his bond; would be a high crime and mis-demeanor, though neither of the things intended to be done, was accomplished. It is the *intent*, which constitutes crime; and this is the scale on which its turpitude is graduated, and its punishment measured. *Pear's* case, *Leach's Cro. Ca.* 213. *Dub.* ed. *The King* v. *Higgins*, 2 *East* 5. *The King* v. *Phillipps*, 6 *East* 464.

In this case, an assault and battery is distinctly charged, and alleged to have been carried on, and finally completed, with a view to *strangle, suffocate* and *drown* the person named in the information.

2. That the information was bad, because it charged the offence as being *contra formam statuti*, whereas there is no statute prohibiting such offence. [This point was not much pressed.]

*Stanley*, for the defendant in error, contended, 1. That the offence charged in the information was a breach of the peace against the statute; (*p.* 162. *sect.* 59.) and the *attempt to suffocate, strangle and drown*,—and *the intent to drown and suffocate*, alleged, were *aggravations* of the battery, not a distinct offence. The *aggravated nature* of the offence, mentioned in the revised statute, is only an equivalent expression—perhaps a more general one—for the *aggravations, by notorious and high-handed violences*, mentioned and provided for in the old statute. *Tit.* 125. *c.* 1. *s.* 2. *p.* 545. ed. 1808. A battery with intent to maim and kill, is a high crime and misdemeanor at common law; and between this offence and an aggravated breach of the peace, there is no intermediate offence, by violence to the person.

2. That the offence charged in the information, was not a battery with intent *to kill*. In the first place, the terms used, according to their *common acceptation*, do not necessarily import an intention to kill. *Drowning* implies a suspension of respiration; and a person drowned may be resuscitated. A striking down by lightning, where the powers of life are suspended, is not, of course, a killing. Secondly, the terms used are not adapted to describe *technically* the offence of a battery with intent to kill. See the precedent in *The State* v. *Danforth*, 3 *Conn. Rep.* 112. See also 2 *Swift's Syst.* 381. 1 *Chitt.*

*Crim. Law,* 190. 191. 198, 9. 201. 3 *Chitt. Crim. Law,* 592. Technical language is peculiarly necessary, where the principal part of the offence consists in *the intent.* Without it, no circumlocution will be of any avail.

3. That if on any construction of the offence, as described in the information, it could be considered within the jurisdiction of the county court, the judgment ought not to be reversed. To oust the county court of jurisdiction, it must clearly appear, that that court has not jurisdiction; the offence must be so described as to be necessarily within the cognizance of the superior court.

4. That the plaintiff in error was precluded from making this objection. First, because it was not made at the proper time, *viz.* at the trial. Secondly, because he is not injured, by the judgment complained of; as, upon the ground taken by him, he has been convicted of a less offence, than that of which he was in fact guilty.

*Staples,* in reply to the last suggestion, said, that the plaintiff in error did not complain that he had been convicted of a less offence, than he had been guilty of; but that he had been tried for an offence of which he was not guilty, before a tribunal, which had no jurisdiction of the offence. The accused insists, that he has been *charged* with a high crime and misdemeanor; not that he has been guilty of any crime. He further insists, that he has a right to shew his innocence, on a trial before that court, and that court only, which has jurisdiction of the offence.

HOSMER, Ch. J. The information alleges against the defendant, the commission of an assault and battery; the casting down one *Samuel Webb* on the ground, dragging him into a brook or pond of water; and holding his body and face in the water and mud, *with intent,* and attempting, to suffocate and drown him. The cause was tried before the county court, to which the information was exhibited; and the defendant having been convicted, was sentenced to pay a fine and the costs of prosecution. On writ of error brought, the superior court affirmed this determination; and the suit before this court is for the reversal of the preceding judgments.

The information avers the offence to have been against *the form of the statute;* and this gives rise to the objection, of which I shall first take notice. It is said, there is no statute, by

*Middlesex,*
July,
1824.

Southworth
*v.*
State.

which the above crime is prohibited ; that it is an offence at common law only ; and hence, that the information is erroneous. The law on this subject has been misconceived. If an indictment or information conclude "*contra formam statuti,*" and there is no statute, these words shall be rejected as surplusage. 2 *Swift's Syst.* 384. *Knowles* v. *State*, 3 *Day*, 103.

The principal objection is, that the offence charged, is a high crime and misdemeanor at common law, and that it is not within the jurisdiction of the county court. In *The State* v. *Danforth*, 3 *Conn Rep.* 112. it was determined by this court, that a battery with intent to kill, is, by the common law of this state, a high crime and misdemeanor, and can alone be prosecuted before the superior court. It was, in that case, decided, that an offence of the above description, is not within the statute against breaking the peace, aimed, as it is, against an assault and battery only, and which, if aggravated by some notorious and high handed violence, is within the exclusive jurisdiction of the county court ; that the statute refers to batteries attended with unusual aggravations, but that the crime there prosecuted, having been committed with an intent to kill, was, *in its nature*, a different offence, and, as a high crime and misdemeanor, within the exclusive jurisdiction of the superior court. Now, in what respect is an attempt to *suffocate and drown*, distinguishable from an attempt to kill ? They both of them are efforts to take away life. A battery with intent to kill, is an attempt to extinguish life, in one manner ; and the same act with an intent to suffocate and drown, is an attempt to take life away in another manner ; and this difference *in mode*, and not in *essence*, is the only diversity between the cases. There has been much refinement in an endeavour to show, that a person may be drowned, without the extinction of life, because, as it was said, persons have been drowned and then resuscitated. If this be so, then those persons *were killed*, and afterwards brought back to life ! In conversation not pretending to accuracy, it may be said, that such an one was drowned, and then restored ; and so it may be, and often has been, said, that a person was hung, and afterwards recovered life. But the popular and obvious meaning of both words, if there be nothing to qualify or explain them, is, that one person died by the halter, and the other by suffocation. And it cannot admit of a doubt, that in the information under discussion, the state might prove, and the conviction is demonstration that it did prove, that an attempt was made by *Southworth* to kill.

*Middlesex*,
July,
1824.

Southworth,
*v.*
State.

If it were apparent, that the attempt was to suffocate, accompanied with the intention to leave a spark of life, which might possibly be rekindled, it would make no difference in my opinion. An assault and battery, with so nefarious an intention, would be a high crime and misdemeanor, to be classed with attempts to poison, and to do other similar acts, where life is endangered ; and, in atrocity, it surmounts an attempt to rob.

This subject I will not further pursue ; but place my opinion on this basis, that the charge was, and must have been proved to be, an attempt to destroy life by drowning. Of such an offence the county court had no jurisdiction.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

Judgment reversed.